# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# CINCINNATI DIVISION

| | | |
|---|---|---|
| TIFFANY CALIMAN, <br> 508 Vineyard St., #12 <br> Vevay, IN 47043 <br><br> Plaintiff, <br><br> v. <br><br> PIES & PINTS <br> 56 West Freedom Way, <br> Cincinnati, OH 45202 <br><br> **Serve also:** <br><br> PIES & PINTS CINCINNATI, LLC <br> c/o Acme Agent, Inc. (Stat. Agent) <br> 41 S High St Ste 2800 <br> Columbus, OH 43215 <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. <br><br> JUDGE: <br><br><br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Tiffany Caliman, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Caliman is a resident of the city of Vevay, Switzerland County, state of Indiana.

2. Defendant PIES & PINTS CINCINNATI, LLC ("P&P") is a foreign-incorporated business with its Ohio principal place of business located at 56 West Freedom Way, Cincinnati, OH 45202.

3. P&P is, and was at all times hereinafter mentioned, an employer within the meaning of 42 U.S.C §2000e, *et seq*, 42 U.S.C §12111, *et seq.*, and/or 29 CFR § 825, *et seq.*, and/or R.C. § 4112.01(A)(2).



## JURISDICTION & VENUE

4. Jurisdiction is proper over Defendant pursuant to 28 U.S.C. § 1331 in that Caliman is alleging a federal law claim arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S. Code § 2000e, *et seq*.

5. Venue is properly placed in the United States Court for the Southern District of Ohio, Cincinnati Division, because it is the district court for the district, division, and county in which the substantial part of the events or omissions giving rise to Caliman's claims occurred, pursuant to 28 U.S.C. § 1391.

6. Within 180 days of the conduct below, Caliman filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2018-00049, alleging that Defendant had discriminated against her because of her disability and retaliated against her for making reports of harassment and disparate treatment by Defendant.

7. Caliman was mailed her Dismissal and Notice of Rights from the EEOC on or about April 23, 2018.

8. Caliman received her Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

9. Caliman has filed this Complaint on or before the 90-day deadline set forth in her Dismissal and Notice of Rights.

10. Caliman has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.



## FACTS

12. Caliman is a former employee of P&P.

13. Caliman is disabled, and thus is in a protected class based on her disability pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000e, et seq. and under R.C. § 4112 et seq.

14. Alternatively, P&P perceived Caliman as disabled, and thus is in a protected class based on her disability pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000e, et seq. and under R.C. § 4112 et seq.

15. Caliman worked for P&P as a prep cook, from in or around December 2016, until P&P took Caliman off the schedule in or around July 2017.

16. Caliman had no significant history of discipline for attendance or for performance while working for P&P.

17. The early portion of Caliman's employment was generally positive, until April 2017.

18. On or about April 5, 2017, Caliman accidently cut her thumb while slicing some cheese at work. It was a small unassuming cut, and so she cleaned it and her area and started to return to work.

19. Shortly after, her boss Michael Samartini told her to go home and that she would not be allowed back until she had a return to work notice from her doctor.

20. After that conversation with Samartini, Caliman spoke with Christopher Varney, then-current general manager, who had her file a Worker's Compensation claim.

21. Caliman missed the next two days of work because of that cut (and the following weekend where she was not scheduled to work) and return for a normal work day on or about Monday, April 10, 2017.



22. The next day, she had a follow up appointment for her cut with the Worker's Compensation doctor. After that visit, she was allowed to return to work with no restrictions.

23. On or about April 12, Caliman began to start having complications from her thumb.

24. Caliman felt a burning sensation followed by numbness and paralysis of her full arm. She went to the hospital via ambulance, and the doctor there ruled out a stroke as the cause.

25. The next day, Caliman went to the doctor again, who put her on work restrictions.

26. On or about April 18, 2017, after another doctor visit, Caliman was diagnosed with Complex Regional Pain Syndrome/Reflex Sympathetic Dystrophy ("CRPS"). She returned to work after that doctor's visit.

27. Over the next few weeks, Caliman visited the doctor about once each week. She eventually saw a surgeon, who ruled out the need for any surgery.

28. Caliman eventually had to file a motion with the Bureau of Worker's Compensation to continue seeing the doctor.

29. Caliman also had her restrictions removed around that time, despite still having odd feeling in her arm.

30. Caliman then filed a Worker's Compensation claim for the CRPS. Caliman continued to work but had trouble as she occasionally dropped things due to her CRPS.

31. Amy Quimby, front house manager, yelled at Caliman several times for dropping items.

32. On or about June 8, 2017, Caliman had a follow up appointment with the Department of Job and Family Services for familial reasons.

33. The day before, on or about June 7, 2017, Caliman spoke with Jake Mazur (kitchen manager and her direct report) regarding another appointment she had the next day.



34. Caliman requested to switch shifts from the 8th to the 9th for the appointment; the request was granted.

35. On or about June 9, 2017, Caliman went back into work again.

36. That day, Caliman had further pain and tingling in her arm.

37. She spoke again with Quimby, telling her how she felt and asked to go home for the day and to return as normal on Monday.

38. Quimby granted the request, so long as Caliman first finished the project she was currently working on. Caliman finished the project, then went clocked out and went home.

39. Typically, P&P posts the next week's work schedule on Sundays, but Caliman did not receive it that Sunday. It was still not posted on that Monday, the 11th.

40. Caliman texted Christopher Rak, the new GM, inquiring about her schedule that week.

41. Rak texted her back, saying he thought she had quit the previous Friday.

42. Caliman texted back saying that she had not quit, but had been allowed to leave for medical reasons.

43. Rak told her that that was not how it was explained to him, and asked her to come in for a meeting to discuss further.

44. The next day, on or about June 12, 2017, Caliman went into work to meet with Rak and told him the events of the previous Friday.

45. Rak told Caliman he needed to find a place to put her, as P&P was cutting hours for fiscal reasons, but that he would call her in a few days to bring her back in.

46. Caliman assumed, at this point, that all employees' hours had been cut.

47. Caliman returned to work shortly after, with drastically cut hours, working only two days in the full month.



48. On or about June 30, 2017, Caliman filed for, and after an appeal won, unemployment benefits.

49. Caliman was still working for P&P at that point, but with the aforementioned drastically cut hours.

50. Caliman was again kept off the schedule until July 10; she worked one more day on the 12th, which was her final working day at P&P.

51. Caliman called multiple times through July, but never got a call back about putting her on the schedule.

52. In August 2017, Caliman rightfully assumed she would not be placed back on the schedule ever, and so stopped calling about it.

53. Caliman's employment was never officially terminated.

54. Shortly after, Caliman filed a Charge of Discrimination with the EEOC.

55. Caliman worked through that process, and eventually was issued her Right to Sue letter.

56. Conflicting reasons for P&P's refusal of letting Caliman continue working were used by the restaurant at her Unemployment appeal and through the EEOC process.

57. At Unemployment, P&P purportedly reduced her hours because of Caliman's availability and poor performance, pinning the blame on her.

58. At the EEOC, P&P purportedly reduced her hours because of some sort of bad behavior, then said that she quit in July 2017.

59. All of those reasons were false.

60. Rather than allowing Caliman to return to work after receiving permission to leave for medical reasons, P&P assumed that she had quit.



61. The restaurant, from that point on, almost never allowed Caliman to return to work, regardless of her situation with her doctor and her work release.

62. Taking Caliman off the schedule was an adverse employment action by P&P. Caliman was never officially terminated.

63. P&P has a policy and practice of fully investigating significant workplace incidents.

64. P&P's purported reason for Caliman's termination is pretext for disability discrimination.

65. As a result of being constantly harassed and discriminated against during her employment with P&P, and being wrongfully terminated from P&P, Caliman has suffered severe emotional distress, anxiety, and depression.

### **COUNT I: DISABILITY DISCRIMINATION UNDER R.C. § 4112.02**

66. Caliman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

67. Caliman is a member of a statutorily protected class based on her disability (CRPS) under R.C. § 4112.01 et seq.

68. Alternatively, Defendant perceived Caliman as disabled for her CRPS under R.C. § 4112.04 et seq.

69. Defendant was an employer as defined by R.C. § 4112.01(A)(2).

70. Throughout her employment, Caliman was fully competent to perform her essential job duties.

71. Defendant cited differing reasons for the end of Caliman's employment, but never officially terminated her.

72. Defendant violated Ohio Revised Code § 4112.01 et seq. by treating Caliman differently than other similarly situated employees based on her disability.



73. Defendant violated R.C. § 4112.01 et seq. by discriminating against Caliman due to her disability.

74. Defendant violated R.C. § 4112.01 et seq. by applying its employment policies in a disparate manner based on Caliman's disability.

75. In or around July 2017, Caliman suffered an adverse employment action (removal from the schedule).

76. As a direct and proximate result of Defendant's conduct, Caliman has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

77. As a direct and proximate cause of Defendant's conduct, Caliman is entitled to all damages provided for in O.R.C. § 4112.051, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT II: DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12112 et seq. and/or THE ADA AMENDMENTS ACT OF 2008.

78. Caliman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. Caliman is a member of a statutorily protected class based on her disability, CRPS, under The Americans With Disabilities Act 42 U.S.C. § 12112 et seq. and/or the Ada Amendments Act of 2008.

80. Throughout her employment, Caliman was fully competent to perform the essential functions of her job.

81. Defendant treated Caliman differently than other similarly situated employees based on her disability.



82. Defendant discriminated against Caliman on the basis of her disability throughout her employment.

83. In or around July 2017, Caliman suffered an adverse employment action (termination).

84. Caliman's discharge was pretextual.

85. Caliman's discharge was actually due to her disability.

86. Defendant violated Title VII by discriminating against Caliman due to her disability.

87. Defendant violated Title VII by terminating Caliman's employment based upon her disability.

88. Defendant's discrimination against Caliman based on her disability violates Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S. Code § 2000e, *et seq*.

89. Upon information and belief, Defendant replaced Caliman with someone outside her protected class.

90. As a direct and proximate result of Defendant's conduct, Caliman suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: WRONGFUL TERMINATION BASED ON DISABILITY DISCRIMINATION UNDER R.C. § 4112.02 and/or THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12112 et seq.

91. Caliman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

92. Caliman is a member of a statutorily protected class based on her disability, CRPS, under The Americans With Disabilities Act 42 U.S.C. § 12112 et seq. and/or the Ada Amendments Act of 2008.



93. Throughout her employment, Caliman was fully competent to perform the essential functions of her job.

94. In or around July 2017, Caliman suffered an adverse employment action (removal from the schedule).

95. Defendant's reason for Caliman' removal from the schedule was pretextual.

96. Defendant actually terminated Caliman' employment based on her disability.

97. Defendant violated The Americans With Disabilities Act 42 U.S.C. § 12112 et seq. and/or the Ada Amendments Act of 2008 when it terminated Caliman' employment based on her disability.

98. As a direct and proximate result of Defendant's conduct, Caliman has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: RETALIATORY DISCRIMINATION

99. Caliman restates each and every prior paragraph of this complaint, as if it were fully restated herein.

100. As a result of the Defendant's discriminatory conduct described above, Caliman complained about the discrimination, harassment, and disparate treatment she was experiencing.

101. Subsequent to Caliman reporting the discrimination, harassment, and disparate treatment to her supervisor, manager, and/or employer, P&P terminated Caliman's employment.

102. Defendant's actions were retaliatory in nature based on Caliman's opposition to the unlawful discriminatory conduct.



103. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

104. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Caliman, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Caliman demands from P&P the following:

a) Issue a permanent injunction:

   i. Requiring P&P to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring P&P to expunge Caliman's personnel file of all negative documentation;



c) An award against P&P for compensatory and monetary damages to compensate Caliman for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against P&P in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Caliman' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew Bruce*_____
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Ste. 200
Beachwood, Ohio 44122
Phone: (513) 883-1147
Fax:    (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com

*Attorneys for Plaintiff Tiffany Caliman*



## JURY DEMAND

Plaintiff Tiffany Caliman demands a trial by jury by the maximum number of jurors permitted.

> */s/ Matthew Bruce*_____
> Matthew G. Bruce (0083769)

